UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

J&J SPORTS PRODUCTIONS, INC.,

                      Plaintiff,

              - against -

ELIZABETH RIBEIRO, et al.,

                      Defendants.

REPORT AND RECOMMENDATION

07 Civ. 615 (DAB) (RLE)

---------------------------------------------------------------

**To the HONORABLE DEBORAH A. BATTS, U.S.D.J.:**

## I.    INTRODUCTION

The Plaintiff, J&J Sports Productions, Inc. ("J&J Sports"), brings this action against Elizabeth Ribeiro, individually, and as officer, director, shareholder, and/or principle of Liz Café II, Inc. d/b/a Liz Cafe II Bar & Restaurant a/k/a Liz Cafe a/k/a Liz Cafe 2 Bar and Restaurant, pursuant to the Communications Act of 1934, as amended, 47 U.S.C. § 605 (1996). Plaintiff alleges that Defendants unlawfully intercepted and exhibited the April 8, 2006 Mayweather/Judah pay-per-view boxing match, which was distributed by Plaintiff through closed circuit television and encrypted satellite signals. Plaintiff seeks up to $10,000 in damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), up to $100,000 in enhanced damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), and attorney's fees and costs pursuant to 47 U.S.C. § 605(e)(3)(B)(iii) from Rebeiro, in both her individual and corporate capacities. Defendants failed to answer the Complaint or respond to Plaintiff's motion for default judgment. The Honorable Deborah A. Batts entered a default judgment against Defendants on August 10, 2007, and referred the matter to the undersigned for an inquest on damages. Defendants failed to appear at a conference scheduled on November 7, 2007, and failed to respond to Plaintiff's submission on damages by

November 30, 2007, as ordered by the Court. For the following reasons, I recommend that judgment be entered for J&J Sports in the amount of $6,000 in damages and $1,235 in attorney's fees and costs.

## II. BACKGROUND

J&J Sports owns the distribution rights to the April 8, 2006 Mayweather/Judah boxing match, which could be accessed and exhibited through either closed circuit television or by encrypted satellite signal after contracting with and paying a fee to J&J Sports. (Plf. Mem. of Law at 2.) It anticipated that establishments around the New York City area would attempt to illegally obtain and exhibit the boxing match without paying the required fee, and hired investigative agencies to visit various locales on the night of April 8, 2006, to see if the match was being intercepted and exhibited without the authorization of, or payment to, J&J Sports. The independent auditor hired by J&J Sports entered the Liz Cafe without paying a cover charge and witnessed the broadcast of the boxing match to approximately thirteen people in an establishment with an estimated capacity of about one hundred. (Id. at 3.) Liz Cafe had not contracted with J&J Sports to access the match.

## III. DISCUSSION

J&J Sports asserted three counts of liability in the Complaint against Defendants: 1) the unauthorized "reception and publication or use of communications . . . for which J&J Sports had the distribution rights thereto," in willful violation of 47 U.S.C. § 605(a); 2) the modification of a device or utilization of equipment, "knowing or having reason to know that the device or equipment is used primarily in the assistance of the unauthorized decryption of satellite cable programming . . . or . . . other prohibited activity," in violation of 47 U.S.C. § 605 (e)(4); and 3)

2

the "unauthorized reception, interception and exhibition of any communications service offered over a cable system," in violation of 47 U.S.C. § 553. (Plf. Complaint.) J&J Sports has chosen to select damages for violations under § 605(a).

## A. Statutory Framework

J&J Sports is seeking statutory damages and attorney's fees and costs under 47 U.S.C. § 605, which prohibit individuals from "receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio . . . except through authorized channels of transmission or reception." 47 U.S.C. §605(a). For violation of this statute the court may award either actual or statutory damages at the request of the aggrieved party. 47 U.S.C. §605(e)(3)(C). J&J Sports has requested statutory damages up to $10,000 under § 605(e)(3)(C)(i)(II); enhanced damages for willful violation up to $100,000 under § 605(e)(3)(C)(ii); and attorney's fees under § 605(e)(3)(B)(iii).

## B. Liability

When defendants default, as in this case, the plaintiff's factual allegations, excepting those related to damages allegations, are accepted as true. *See, e.g., Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974 ); *DIRECTV v. Hamilton*, 215 F.R.D. 460, 462 (S.D.N.Y. 2003). Therefore, J&J Sports's Complaint will be taken to establish that Defendants violated the Communications Act, § 605(a) and (e)(4) and the Cable Act § 553, by willfully intercepting and exhibiting the Mayweather/Judah pay-per-view boxing match on April 8, 2006, without J&J Sport's authorization, for "direct or indirect commercial advantage or private financial gain," and for using a device to accomplish the interception. (Plf. Complaint.)

J&J Sports seeks to hold Ribeiro liable both in her individual capacity and as an officer,

director, shareholder and/or principle of her business entity Liz Cafe II., Inc. To hold Ribeiro vicariously liable in her individual capacity under § 605, J&J Sports must show that Ribeiro had "a right and ability to supervise the violations, and that she had a strong financial interest in such activities." *J&J Sports Productions, Inc., v. Tonja Meyers, et al.*, 06 Civ. 5431 (BSJ)(JCF), Slip Copy, 2007 WL 2030288, at *3 (S.D.N.Y. July 16, 2007) (adopted by *J & J Sports Prods., Inc. v. Meyers*, 2007 U.S. Dist. LEXIS 66589 (S.D.N.Y. Aug. 28, 2007)) (*citing Softel*, 118 F.3d at 971; *Shapiro, Bernstein & Company, Inc. v. H.L. Green Co.,* 316 F.2d 304, 307 (2d Cir. 1963)) (quotation marks omitted). Ribeiro had supervisory control over the activities of April 8, 2006, and received financial benefit therefrom. (Plf. Complaint §§ 8, 9.) J&J Sports may hold Ribeiro jointly and severally liable for damages in both an individual and corporate capacity.

**C.     Damages**

Where a defendant is found liable under both § 553 and § 605, a plaintiff is entitled to have damages awarded under § 605, which provides for greater recovery. *Time Warner Cable of New York City v. Googies Lunchonette, Inc.*, 77 F. Supp.2d 485, 489 (S.D.N.Y. 1999) (*citing International Cablevision, Inc. v. Sykes*, 75 F.3d 123, 127 (2d Cir. 1996); *Time Warner Cable of New York City v. Papathan-sis,* 97 Civ. 3537(JSM)(THK), slip op. at 7-8 (S.D.N.Y. Sept. 22, 1998); *Time Warner Cable of New York City v. Barnes,* 13 F. Supp.2d 543, 548 (S.D.N.Y. 1998)). J&J Sports has elected to pursue statutory damages up to $10,000 under § 605(e)(3)(C)(i)(II), and enhanced damages for willful violation up to $100,000 under § 605(e)(3)(C)(ii).

The Court has discretion to award damages under § 605 and should take into account the proportionality between the loss suffered by the plaintiff and the profit gained by the defendant.

4

*See J&J Sports Productions, Inc.,* 2007 WL 2030288, at *3; *Garden City Boxing Club, Inc. v. Paquita's Cafe, Inc., et al.*, 06 Civ. 6953 (RMB)(JCF), Slip Copy, 2007 WL 2783190, at *3 (S.D.N.Y. Sept. 26, 2007) (adopted by *Garden City Boxing Club, Inc. v. Paquita's Cafe, Inc.*, Slip Copy, 2007 WL 2981928 (S.D.N.Y. Oct. 10, 2007)).

1.  **Statutory Damages Pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II)**

In this circuit, one of two approaches is normally applied when calculating statutory damages. *See, e.g., Time Warner Cable of New York City v. Googies Luncheonette, Inc.*, 77 F. Supp.2d 485, 489-90 (S.D.N.Y. 1999) (citing cases). When the exact number of patrons is unknown, courts will award a flat sum based on considerations of justice. *See, e.g., Entertainment by J & J, Inc. v. Suriel*, 01 Civ. 11460 (RO), 2003 WL 1090268 (S.D.N.Y. Mar.11, 2003). When the exact number of patrons is known, the court will base the award on the number of patrons in the establishment who viewed the unauthorized showing multiplied by a number set by the court. This number varies widely from $20 to $300, although most courts set a number around $50. See, e.g., *Garden City Boxing Club, Inc. v. Salcedo,* 04 Civ. 5027 (DFE), 2005 WL 2898233, at *2 (S.D.N.Y. Nov. 3, 2005) (setting multiple at $300); *Time Warner Cable v. Sanchez,* 02 Civ. 5855 (GBD) (FM), 2003 WL 21744089, at *3-4 (S.D.N.Y. July 8, 2003) (setting multiple at $20). *See also J & J Sports Productions, Inc. v. Spar*, Slip Copy, 06 Civ. 6101 (SLT) (MDG), 2008 WL 305038, at *2 (E.D.N.Y. Feb. 1, 2008) (citing cases that set the multiple around $50).

Lee W. Packtor, the private investigator hired by Plaintiff, arrived at the Defendant's establishment at 10:00 p.m. on April 8, 2008, while the tenth round of the fight was being exhibited on three different television sets. (Plf.'s Aff., Ex. C, Piracy Aff.) He observed thirteen

5

people at the establishment, and estimated that the restaurant had a capacity to hold one hundred people. *Id*. If the Court were to multiply $54.95, the price paid for residential pay-per-view, by thirteen people it would equal only $714.35. (Plf.'s Aff. § 9(B).) The Court will apply a multiple of approximately two to bring the award to $1500 because the statute requires a minimum award of $1000.

2. **Statutory Damages Pursuant to 47 U.S.C. § 605(e)(3)(C)(ii)**

The Plaintiff is also entitled to enhanced damages under 47 U.S.C. § 605(e)(3)(C)(ii) of not more than $100,000. The violation was committed willfully and for purposes of direct or indirect commercial advantage, as the exhibiting of the pay-per-view match without authorization, by either descrambling the reception of the pay-per-view broadcast or using an illegal cable drop or splice from an apartment house, requires a willful act. (Plf.'s Aff. §9(A), (C).) Courts, however, must bear in mind that "although the amount of damages should be an adequate deterrent, [a single] violation is not so serious as to warrant putting the restaurant out of business." *Garden City Boxing Club, Inc. v. Polanco,* 05 Civ. 3411 (DC), 2006 WL 305458, at *5 (S.D.N.Y. Feb 7, 2006). There is no indication in the record that Defendants were repeat violators of the Communications Act.

Because Defendants defaulted, it is difficult for the Court to determine the size of their business as no information was submitted on this matter. There were thirteen patrons at the time Packtor visited the establishment, and he described it as located on the ground floor of a four story building with an estimated capacity of one hundred people. (Plf.'s Aff. Ex. C, Piracy Aff.) While it is not apparent from this description that the establishment is a small business, it seems likely that it is. The Court will also take into account that there was no cover being charged at

the door, so whatever profits were reaped by Defendants were likely minimal. *Id*.

Courts have awarded anywhere from three to six times the statutory damages award for enhanced damages. *See, e.g.*, *J & J Sports Productions, Inc.*, 2008 WL 305038, at *4 (awarding enhanced damages of $6,000, six times the base award against defendant); *Googies Luncheonette*, 77 F. Supp.2d at 491 (awarding enhanced damages of $3,000, three times the base award, against defendant); *Broadcast Music, Inc. v. R Bar of Manhattan, Inc.*, 919 F. Supp. 656, 660 (S.D.N.Y.1996) (increase of five times the base award against defendant). In this case, the Court will award three times the statutory damages for enhanced damages of $4,500.

**D.      Attorney's Fees and Costs**

The total hours submitted, multiplied by the hourly rate requested by J&J Sports comes to a total of $685 in attorney's fees and $550 in costs. Under 47 U.S.C. § 605(e)(3)(B), if a violation is found, attorney's fees and costs are mandatory. J&J Sports's counsel has submitted an affidavit detailing 2.63 attorney hours at a rate of $200 per hour and 2.12 paralegal hours at a rate of $75.00 per hour. (Att.'s Aff.) The Court finds both the rate and the time spent on the matter reasonable. Plaintiff lists $350 for filing fees and $200 for service of process. Accordingly, I recommend J&J Sports be awarded $685 in attorney's fees and $550 in costs, a total of $1235, against Defendants.

## IV.   CONCLUSION

In conclusion, I recommend that Plaintiff be awarded $6,000 in damages for Defendants' willful violation of the Communications Act in both an individual and corporate capacity, and $1235 in attorney's fees and costs against Defendants.

Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have ten (10) days

after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Deborah A. Batts, 500 Pearl Street, Room 2510, and to the chambers of the undersigned, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See* **Thomas v. Arn**, 474 U.S. 140, 150 (1985); **Small v. Secretary of Health and Human Services**, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); Fed. R. Civ. P. 72, 6(a), 6(e).

**DATED: April 2, 2008**
**New York, New York**

**Respectfully Submitted,**

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**

Copies of this Report and Recommendation were sent to:

For the Plaintiff: Julie Cohen Lonstein
Lonstein Law Office P.C.
1 Terrace Hill, P.O. Box 351
Ellenville, NY 12428
845-647-8500
Fax: 845-647-6277
Email: Info@SignalLaw.com

For the Defendant: Liz Cafe II
Attn: Elizabeth Ribeiro
14 Warburton Ave.
Yonkers, NY 10701

8